IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| LEVI STRASSER,<br><br>          Petitioner,<br><br><br>vs.<br><br><br>UNITED STATES OF AMERICA,<br><br>          Respondent. | ORDER AND MEMORANDUM<br>DECISION DENYING MOTION<br>TO VACATE, SET ASIDE, OR<br>CORRECT SENTENCE<br><br>Case No. 2:12-CV-182-TC |

A grand jury indicted Petitioner Levi Gene Strasser and six co-defendants with four counts of drug-trafficking charges.  (Mr. Strasser was charged with two of the five counts.)  On July 28, 2010, Mr. Strasser plead guilty to count one of the indictment, conspiracy to distribute Oxycodone.

The Presentence Report (PSR) described Mr. Strasser's role in the conspiracy:  Mr. Strasser received Oxycodone tablets from another co-defendant, Brett Shane Blodgett.  Mr. Strasser brought the tablets from Las Vegas, Nevada, to the Salt Lake area.  He distributed the tablets to co-defendants, including Michael Joseph Diaz and Erick Phillip Gleave, who then sold them.

Under the United States Sentencing Guidelines (USSG), Mr. Strasser had a base offense level of 34 and a criminal history category of III.  His advisory guideline range was 135 months to 168 months.  The court departed downward from the advisory guideline range and sentenced

Mr. Strasser to 72 months incarceration.[1]

Mr. Strasser appealed his conviction to the Tenth Circuit Court of Appeals.  In his appeal, he raised the argument that he had received ineffective assistance of counsel.  The Tenth Circuit dismissed his appeal, finding that he had raised no meritorious claims.  But the court did not consider Mr. Strasser's contention that he had received ineffective assistance of counsel, noting that "[f]urther development of the record and an opinion by the district court would be helpful to our review."  United States v. Strasser, 445 Fed. Appx. 109, 116 (10th Cir. 2011) (unpublished).

Mr. Strasser has now filed a motion to vacate his sentence under 28 U.S.C. § 2255.   He maintains that he received ineffective assistance of counsel at his sentencing:

> Absent counsel's ineffectiveness, Strasser asserts that he would have received a sentence more in line with that of his co-defendant's—48-60 months—or at least a sentence less than 72 months he received had counsel: (1) objected to the PSR's attribution of the additional 1,885 Oxycodone pills found on co-conspirator Gleave; (2) effectively mitigated Strasser's criminal  history and demonstrated that his personal characteristics and criminal history are substantially similar (if not less aggravating) than that of codefendants Procter [sic] and Gleave; informed Strasser of the letter from his in-laws that the Court found "most disturbing" so Strasser could refute the allegations; and (3) argued for greater variance based on sentencing factor manipulation.

(Mot. Vacate 7-8, Dkt. No. 1.)

After carefully reviewing Mr. Strasser's petition and construing it liberally, the court concludes that Mr. Strasser is not entitled to relief.

---

[1]The Tenth Circuit Court of Appeals described the guideline calculations from the PSR in greater detail.  See United States v. Strasser, 445 Fed. Appx. 109, 111 (10th Cir. 2011) (unpublished).

# ANALYSIS

**Legal Standard**

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that his counsel's deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove that counsel's performance was deficient, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Furthermore, the defendant must show that counsel's performance fell below an objective standard of reasonableness. Id. at 688. "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.

To establish prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. But "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." Id. at 697.

**Mr. Strasser's Contentions**

  1. The 1,885 Oxycodone Pills

The PSR writer concluded that Mr. Strasser was responsible for a total of 458,770 grams

3

of Oxycodone.  (PSR at ¶¶ 35, 40.)  This amount consisted of: 11 Oxycontin[2] tablets purchased

by a confidential informant from Mr. Diaz (id. at ¶ 17); 77 tablets purchased by the same

confidential informant from Mr. Diaz (id. at ¶ 18); 2,391 tablets, 1,404 tablets, 191 tablets, and

100 tablets, which were all found in the possession of Mr. Diaz when he was arrested (id. at

¶ 21); 79 tablets found in the possession of Mr. Gleave, when he was arrested (id. at ¶ 28); and

1,806 tablets and 55.9 grams of marijuana, found during a search of Mr. Gleave's residence (id.

at ¶ 30).  Holding Mr. Strasser responsible for approximately 6,000 pills, the PSR writer assigned

Mr. Strasser a base offense of 34.  See USSG § 2D1.1(c)(3).[3]

     Mr. Strasser contends that his attorney was ineffective because he did not challenge the

information in the PSR that added the 1,885 tablets found in Mr. Gleave's possession and during

the search of his residence.  But such a challenge would  have been unsuccessful.

     As outlined in the PSR, the evidence described how Mr. Diaz, when he was arrested, told

the DEA agents that Mr. Strasser was "his Las Vegas connection" and his Oxycontin source.[4]

(PSR at ¶ 22.)  According to Mr. Diaz, Mr. Strasser got the tablets from Shane Blodgett.  Mr.

Diaz told the agents that Mr. Strasser and Mr. Blodgett had brought 7,000 tablets on this trip to

Utah. (Id. at ¶ 25.)

     It was Mr. Diaz who arranged the transaction that lead to the arrest of Mr. Gleave.  As

---

[2]Oxycontin tablets contain Oxycodone.

[3]Under the Drug Equivalency Tables found in § 2D1.1(c), 1 gram of Oxycodone equals 6,700 grams of marijuana.  458,770 grams of Oxycodone, the amount attributed to Mr. Strasser, would equal 3,073.760 grams of marijuana.  The Drug Quantity Table, § 2D1.1(c)(3), sets the base offense level of 34 for "[a]t least 3,000 KG but less than 10,000 KG of Marihuana."

[4]Evidence in the PSR came from the investigative reports given to the PSR writer.

outlined in the PSR, Mr.Gleave was one of the prospective buyers of Oxycontin tablets from Mr.

Diaz.  (Id. at ¶¶ 26, 27.)  After being arrested, Mr. Gleave admitted that he had purchased 1,800

Oxycontin tablets from Mr. Diaz in October 2009, and that Mr. Diaz told him that the tablets

came from Las Vegas. (Id. at ¶ 29.)

     This evidence is sufficient to establish by a preponderance of the evidence that Mr.

Strasser was the source of Mr. Gleave's Oxycontin tablets.

     2.  <u>Mitigation of Mr. Strasser's Criminal History</u>

     Mr. Strasser acknowledges that his criminal history was "technically higher" than his

other co-defendants, but he still contends that the fact that he received a higher sentence than the

others demonstrates that his counsel was ineffective at sentencing.[5]  Mr. Strasser is incorrect.

     Mr. Strasser's guideline range was 135 months to 168 months. The court sentenced him

to 72 months, a substantial variance.  In his sentencing memorandum and at the sentencing

hearing, Mr. Strasser's attorney, Ed Brass, made the same argument that Mr. Strasser is now

making: that Mr. Strasser should receive a sentence no higher than 48 months, the sentence

received by two of his co-defendants.  (Tr. of Sentencing Hearing (Tr.), at 3-7, Nov. 30, 2010,

Dkt. No. 197.)  Mr. Brass raised all the arguments that Mr. Strasser now contends should have

---

[5]Mr. Gleave had a guideline range of 108-135 months (Gleave PSR at ¶ 64) and received a sentence of 48 months (Gleave Judg., Dkt. No. 149 in case 2:09-cr-840).  Mr. Blodgett had a guideline range of 87-108 months (Blodgett PSR at ¶ 63) and received a sentence of 48 months (Blodgett Judg., Dkt. No. 125 in case 2:09-cr-840).  Mr. Diaz had a guideline range of 87-108 months (Diaz PSR at ¶ 73) and received a sentence of 12 months and 1 day (Diaz Judg., Dkt. No. 158 in case 2:09-cr-840).  Mr. Saxton had a guideline range of 37-46 months (Saxton PSR at ¶ 63) and received a sentence of 36 months probation (Saxton Judg., Dkt. No. 143 in case 2:09-cr-840).  Mr. Proctor had a guideline range of 70-87 months (Proctor PSR at ¶ 85) and received a sentence of 30 months (Proctor Judg., Dkt. No. 145 in case 2:09-cr-840).

been argued more effectively: that Mr. Strasser's criminal history, although higher than those of

his co-defendants, was in actuality not serious because "it consists of almost entirely petty

misdemeanor alcohol and substance abuse related offenses." (Tr. at 3.)   Mr. Brass also

addressed the letter that Mr. Strasser now says was not shown to him.  Mr. Brass told the court,

"It is a disturbing letter.  It's the letter that you might expect a caring parent to write.  But in the

years since that time, Mr. Strasser has managed to work out a normal relationship with this young

woman, and he's been–during the limited time he was released, he was able to have normal

visitation with his children."  (Tr. at 5.)

At the sentencing hearing, the court indicated that it believed that a sentence higher than

those of his co-defendants was reasonable for Mr. Strasser because Mr. Strasser had a higher

criminal history, which included incidences of violence.  The court pointed to Mr. Strasser's two

convictions for domestic battery.  (PSR at ¶¶ 56, 58.)[6]  The government noted that unlike Mr.

Diaz, Mr. Strasser did not give any assistance to the government; was not a minor participant like

Mr. Proctor; and had a higher criminal history than any of the co-defendants.  (Tr. at 8-9.)

Mr. Strasser received a reasonable, even lenient, sentence.  His attorney was not

ineffective in arguing or making the court aware of any mitigating issues.

3.  <u>Sentencing Manipulation</u>

Mr. Strasser appears to contend that his attorney was ineffective because he did not argue

that Mr. Strasser was reluctant to deal in large quantities of drugs and finally did so only because

---

[6]The description in the PSR of the events leading to Mr. Strasser's convictions included
the police tasering Mr. Strasser (¶ 56) and, in another incident, Mr. Strasser breaking his wife's
arm while his children watched (¶ 58).

of the efforts of Mr. Diaz.  But the evidence outlined in the PSR (based upon government reports) showed that Mr. Strasser had been selling large quantities of Oxycodone for an extended period of time.  Mr. Brass's failure to raise such a weak argument did not make his assistance ineffective.

In sum, Mr. Strasser has not demonstrated either that his counsel's performance was deficient or that he suffered any prejudice.  Mr. Strasser received a sentence below the guideline range.  The record in the case shows clearly that the sentence was reasonable and that his counsel vigorously and effectively represented Mr. Strasser.

Because the motion, the files, and the record in this case conclusively show that Mr. Strasser is entitled to no relief, the court DENIES Mr. Strasser's request for an evidentiary hearing.

### ORDER

For the above reasons, Mr. Strasser's Petition  is DISMISSED and Mr. Strasser's request for an evidentiary hearing is DENIED.

SO ORDERED this 9th day of April, 2012.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge